**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Innovative Sports Management Incorporated, | No. CV-18-02211-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Anjani Komar Singh, et al., | |
| Defendants. | |

This action involves alleged satellite piracy of an exclusive pay-per-view telecast. Plaintiff Innovative Sports Management, Inc. d/b/a Integrated Sports Media has brought suit against Defendant restaurant owners and operator under 47 U.S.C. §§ 553 and 605. Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 35.) The Motion is granted.

**I.    FACTUAL BACKGROUND**

Plaintiff holds the exclusive nationwide commercial licensing rights to exhibit the *2017 International Indian Film Academy Awards Program* (the "Program"), a pay-per-view telecast, which aired on Saturday, July 15, 2017. Restaurants, bars, and other commercial establishments that wanted to display the Program for customers were required to pay Plaintiff a $750 commercial licensing fee. The Program was distributed as an interstate satellite transmission.

Defendants Anjani Komar Singh and Shilpa Mishra are both managing members of Defendant Chutney's LLC d/b/a Chutneys Indian Cuisine, a restaurant operating in Tempe,

Arizona. On July 15, 2017, the day that it aired, Chutney's purchased a $39.99 non-commercial license to view the Program from Flipps Media Inc. Chutney's Facebook page advertised that the Program would be shown at the restaurant for customers that evening. The Facebook page was updated with Program-related posts during the telecast. Chutney's also posted print advertisements at the restaurant.

An investigator affiliated with Plaintiff was present at Chutney's during the evening hours on July 15, 2017. She observed the Program displayed on a pull-down screen via projector and noted approximately 15 customers in the establishment. The investigator estimates that the dining room can hold up to 50 customers, however, Defendants state that their dining room capacity is 180 customers. The investigator provided a written report to the Plaintiff and this lawsuit ensued.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III.  DISCUSSION

### A.  Violation of § 605(a)

Plaintiff elects § 605, the Communications Act, as its remedy. (Doc. 35-3 at 7.) The Communications Act "prohibits the unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another not entitled thereto." *DirecTV, Inc. v.*

*Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (*quoting* 47 U.S.C. § 605(a)) (internal quotation marks omitted). In 1984, Congress amended the Communications Act to include satellite television piracy. *Id*. at 843. The 1984 amendments rearranged the pre-existing prohibition on radio interception into a new subsection (a) and codified new provisions relating to satellite piracy in subsections (d) through (e) of Section 605. *Id*. Although subsection (a) does not textually mention satellite piracy, the Ninth Circuit has consistently held "that the 'communications' protected by § 605(a) include satellite television signals." *Id*. at 844 (citing cases). The Ninth Circuit's interpretation advances Congress's intent in protecting property rights for those who provide satellite entertainment. *Id*. at 843-44. It also harmonizes the pre-existing language arranged into subsection (a) and the new language in subsections (d) through (e) concerning satellite piracy. *Id*.

Defendants' receipt and use of the Program through Flipps Media was "unauthorized receipt and use" within the meaning of § 605(a). Plaintiff had the exclusive nationwide commercial distribution rights to the Program. The minimum fee for a restaurant such as Chutney's was $750. Defendants did not purchase a license from Plaintiff. They, instead, purchased what appears to be a residential viewing license for $39.99 from another distributor. This was done to benefit their restaurant business.

Defendants contend that they were not aware that displaying the Program in a commercial establishment requires a different license and fee than purchasing the pay-per-view license for residential viewing. While this may be true, § 605(a) is a strict liability statute that can be violated regardless of a person's mental state. It is well-established in commercial piracy cases that ignorance of the law is not a defense to liability. *E.g.*, *J & J Sports Productions, Inc. v. Mendoza-Govan*, No. C 10-05123 WHA, 2011 WL 1544886, at *5-6 (N.D. Cal. Apr. 25, 2011). For these reasons, the Court finds one violation of § 605(a), and summary judgment is granted in Plaintiff's favor.

### B.     Individual Defendants

Plaintiff seeks summary judgment against Singh and Mishra, the co-owners of Chutney's. Defendants oppose summary judgment against the individual defendants,

arguing that Plaintiff has not satisfied its burden to impose vicarious liability for the violation. Many courts, including courts in this District, have adopted a standard for vicarious liability for business owners, including members of limited liability companies, in the context of entertainment piracy. "[T]o establish vicarious liability of an individual shareholder [or LLC member] for a violation of . . . § 605, [a p]laintiff must show that: (1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities." *G & G Closed Circuit Events, LLC v. Miranda*, 13-CV-2436-HRH, 2014 WL 956235, at *4 (D. Ariz. Mar. 12, 2014) (*quoting J & J Sports Productions, Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011)).

At the time of the unauthorized use, Singh and Mishra were the co-managing members of the business entity operating as Chutney's. In that capacity, they had the right and the ability to supervise conduct including the entertainment offered to customers during dining room hours. This includes making decisions on the source of entertainment displayed in the restaurant's dining room. Indeed, Mr. Singh was in the establishment when the Program was exhibited to customers and it was his credit card that was used to authorize the Flipps Media purchase. Both Singh and Mishra are members of Chutney's, LLC, giving them an obvious financial interest in the business. The individual defendants are, therefore, liable for the violation.

### C. Damages Award

Plaintiff elects to recover statutory damages (Doc. 35-3 at 17). *See* 47 U.S.C. § 605(e)(3)(C)(i). A successful plaintiff "may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). As mentioned above, the Court finds one violation in this case.

The commercial license fee was $750. Plaintiff is entitled to at least this amount in statutory damages. Plaintiff is entitled to an additional amount given that 15 people viewed the unlicensed broadcast. The Court is also aware of the need to incorporate the statutory

goal of deterrence as part of the statutory damages award. The Court finds that statutory damages in the amount of $2,500 is just.

Plaintiff seeks an enhancement under § 605(e)(3)(C)(ii), which authorizes an increased damages award "of not more than $100,000 for each violation of subsection (a)." This enhancement is available where the court finds that a "violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); *J & J Sports Productions, Inc. v. Vargas*, No. 11-CV-02229-PHX-JAT, 2013 WL 1249206 at *3 (D. Ariz. Mar. 27, 2013).

As support for its argument for enhanced damages, Plaintiff points to Chutney's Facebook advertisements and the Declaration of Doug Jacobs, who is Plaintiff's president. The Court is not persuaded that this evidence supports a finding that the Defendants acted willfully, as is required under § 605(e). While probative on other issues, the Facebook advertisements say nothing about whether Defendants were aware that their actions violated Plaintiff's exclusive distribution rights. Although Mr. Jacobs' declaration is useful in understanding generally applicable concepts concerning television piracy, his declaration, likewise, is not helpful in determining the issue of willfulness. Mr. Jacobs has no personal knowledge about what motivated Defendants to purchase the Program from Flipps Media rather than through Integrated Sports Media. His opinions concerning his "experience in the industry" are self-serving and are given no weight on this issue.

The evidence indicates that Defendants mistakenly purchased a residential license, rather than a commercial license, without knowing that their decision violated the law. *Joe Hand Promotions v. Kennedy*, No. 1:10 CV 2857, 2012 WL 1068789 at *1 (N.D. Ohio Mar. 29, 2012) (denying enhanced damages where "[p]laintiff presented no evidence whatsoever that would have led the Court to conclude that Mr. Kennedy's violation was in any way willful or that Mr. Kennedy had any reason to believe his conduct was a violation of the wire and radio communications laws"). The Court, therefore, denies Plaintiff's request for enhanced damages.

**D.     Attorneys' Fees**

Plaintiff has prevailed on its Communications Act claim. Under the Act, a prevailing plaintiff is entitled to "the recovery of full costs, including awarding reasonable attorneys' fees . . . ." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff may seek costs and move for attorneys' fees as provided for in the Local Rules of Civil Procedure.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** granting Plaintiff's Motion for Summary Judgment on its claim for relief under 47 U.S.C. § 605. (Part of Doc. 35.) The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendants in the amount of $2,500.

**IT IS FURTHER ORDERED** that, because Plaintiff concedes that it can recover under only one, and not both, claim for relief, Plaintiff's alternative claim under 47 U.S.C. § 553 is dismissed and judgment of dismissal on this count shall be included in the judgment.

**IT IS FURTHER ORDERED** construing Defendants' request for *sua sponte* summary judgment in their favor stated in their Response brief (part of Doc. 37) as a Motion for Summary Judgment, which is denied.

**IT IS FINALLY ORDERED** that the oral argument previously scheduled for May 13, 2020 (Doc. 40) is hereby **vacated.** Upon full consideration of the pending motion and relevant authorities, the Court believes that oral argument would not significantly aid the decisional process. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

Dated this 29th day of April, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge